UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SAMUEL ROOSEVELT JONES,

           Plaintiff,           Case No. 1:10-cv-812

v.                                   Honorable Paul L. Maloney

PATRICIA L. CARUSO et al.,

           Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Patricia L. Caruso, Royal H. Calley, Mary Berghuis, Mark Sutherby, L. Strand, (unknown) Grasick and D. J. Palin. The Court will serve Plaintiff's Eighth Amendment claim against Defendant (unknown) Hoekstra.

**Discussion**

I.  Factual allegations

Plaintiff Samuel Roosevelt Jones presently is incarcerated at the Bellamy Creek Correctional Facility (IBC). In his *pro se* complaint, Plaintiff sues Michigan Department of Corrections (MDOC) Director Patricia L. Caruso, Mental Health Rights Specialist Royal H. Calley and the following Earnest C. Brooks Correctional Facility (LRF) employees: Warden Mary Berghuis, Assistant Deputy Warden Mark Sutherby, Nurse L. Strand, Housing Unit Manager (unknown) Grasick, Physician Assistant (unknown) Hoekstra and Hearing Officer D. J. Palin.

Plaintiff suffers from a bi-polar mood disorder. He takes Wellbutrin to treat the disorder. On March 9, 2010, Hoekstra examined Plaintiff and prescribed an increased dosage of Wellbutrin for his mood disorder. On March 13, Plaintiff went to the medication line for his prescription. After Plaintiff received his medication, Nurse Strand checked Plaintiff's mouth. Nurse Strand allegedly found that Plaintiff hid his medication and gave him a major misconduct ticket. Two days later, Plaintiff learned that his prescription had been canceled. Plaintiff filed several grievances and kites regarding the discontinuance of his medication. On March 21 and 22, Plaintiff also kited Hoekstra and Grasick about the lack of follow-up psychiatric treatment. On March 25, Plaintiff sent a copy of a grievance to Defendant Calley but Calley never responded. Plaintiff complains that Defendants violated MDOC Policy Directives 05.01.120 (effective Feb. 15, 2010) and 03.04.100 (effective Dec. 29, 2010) by discontinuing his medication. Plaintiff states that his last "impaired judgment" was on April 22, 2010. (Compl., Page ID #16, docket #1.)

On March 26, Hearing Officer Palin held a hearing on the major misconduct ticket that Plaintiff received from Nurse Strand. According to the Major Misconduct Hearing Report,

Palin considered the statements of Plaintiff, Officer Gregoire and Nurse Strand in addition to the Major Misconduct Report. Defendant Palin summarized the evidence in the Major Misconduct Hearing Report as follows:

> The prisoner says he took his meds. He had his water, was given his medication, drank water, swallowed it. He says he always has problems taking his medication. The nurse checked his mouth. He could not be more specific about any problems taking his medication that day nor of what exactly happened when the nurse asked for the mouth check. He [said that] when he tried to take the pill [] he couldn't swallow it and it was on his tongue when he opened his mouth for the nurse and then he drank more water [and] he swallowed his pill.

(Ex. C2 to Compl., Page ID #25, docket #1-1.)

After reviewing the evidence, Defendant Palin found Plaintiff guilty of the misconduct. The Major Misconduct Hearing Report states:

> According to the Misconduct Report[,] the prisoner was taking his meds, and the report writer saw him attempt to push his pill in his cheek. The report writer asked for a mouth check and asked him to lift up his upper lip and when he did so his 150 mg wellbutrin fell out of his upper lip. The prisoner then took his medication. The prisoner says he took his medication, showed the nurse his mouth, and that was it, but then he described having some problem taking his medication and saying it was on his tongue when the nurse checked his mouth. Officer Gregoire, the med line officer says he was standing there and when the prisoner lifted up his upper lip he saw the pill drop down as well. I find the Reporting Officer credible in light of the prisoner saying the pill was still in his mouth when he showed the nurse his mouth and I find that the prisoner was trying to hid[e] the pill in his mouth and not ingest it, for removal from the area. This so called "cheeking" of his medication is the common method for prisoners to leave the med line without taking their medication. There is a lot of such medication that ends up on the yard and for sale, etc. This is why the nurse checks the mouth and why an officer is there monitoring the process as well. The prisoner was attempting to leave the area without taking his medication, and I find him guilty of the charged offense.

(*Id.*) Plaintiff was sentenced to fifteen days of loss of privileges. Plaintiff then sought a rehearing of the decision. (*Id.*, Page ID #26.) Because of his misconduct conviction, Plaintiff complains that he no longer receives his medication and suffers from panic attacks and mental instability. Plaintiff

argues that Defendants violated his due process rights by discontinuing his medication without any evidence of his guilt. (Compl., Page ID #9, docket #1.) Plaintiff also claims that he should have received notice before Defendants discontinued his medication.

On March 31, Plaintiff saw Physician Assistant Hoekstra but Hoekstra still denied Plaintiff's medication. Plaintiff requested copies of his mental health medical records several times from Defendant Hoekstra. Plaintiff's request was denied each time. Defendant Hoekstra told that Plaintiff that he could not obtain copies of his mental health medical documents while he was incarcerated with the MDOC. Plaintiff eventually filed a grievance for failing to provide him with his medical records. Defendant Calley, however, never responded to his grievance.

On April 10 and 11, Plaintiff requested a law library pass but he did not receive a call out. Plaintiff claims that he has been denied access to the law library on eight occasions between April and May. Plaintiff eventually filed a grievance for being denied access to the library.

During a security classification meeting with Defendant Sutherby on April 20, Plaintiff claims that Defendant Sutherby retaliated by threatening to place Plaintiff in administrative segregation because "[P]laintiff was exhausting [his] administrative remedies." (Compl., Page ID #7, docket #1.) On April 21, Plaintiff kited Warden Berghuis about the threat to place Plaintiff in segregation but Plaintiff never received a response from Berghuis. On April 28, Plaintiff received a Security Reclassification Notice, which indicated that he was to be reclassified to administrative segregation. According to a Step I grievance denial for Grievance No. LRF 10-05-00822-21C, Plaintiff was reclassified to administrative segregation because he was found guilty of several misconducts. (Attach. to Compl., Page ID #50, docket #1-1).

On April 23, 2010, Plaintiff was placed on paper and property restrictions. Plaintiff claims that prison staff refused to give him his legal materials because of those restrictions, and, thus, denied him access to the courts. When Plaintiff was released from paper and property restrictions on April 30, he noticed that a Step II grievance form and other rough draft documents were missing from his papers.

On May 18, Plaintiff was transferred to IBC. Plaintiff argues that Defendants retaliated against him by transferring him to IBC for filing grievances.

In summary, Plaintiff asserts that Defendants violated his (1) Eighth Amendment rights by delaying his medication and psychiatric treatment, (2) due process rights by convicting him of a major misconduct without any physical evidence and by failing to give him notice before discontinuing his medication, (3) First Amendment rights for denying him access to the courts by refusing to call him out for the law library and by destroying a Step II grievance appeal form, and (4) First Amendment rights by retaliating against him for filing grievances by threatening to place him in administrative segregation and eventually placing him in administrative segregation, and by transferring him to IBC. Plaintiff also complains that Defendants violated policy directives and administrative rules.

Plaintiff requests declaratory relief and monetary damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Respondeat Superior

Plaintiff fails to make specific factual allegations against Defendants Caruso, Calley and Berghuis other than his claim that they failed to conduct an investigation in response to his kites and grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Caruso, Calley and Berghuis engaged in active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### B. Misconduct Proceeding

Plaintiff claims that Nurse Strand and Hearing Officer Palin violated his due process rights with respect to his misconduct ticket for concealing his medication. Specifically, Plaintiff complains that Defendants failed to provide any evidence for his misconduct and failed to give him any notice before discontinuing his medication. The starting point for any discussion of the

procedural due process rights of a prisoner subject to a disciplinary proceeding is *Wolff v. McDonnell,* 418 U.S. 539 (1974). In *Wolff,* the Supreme Court held that prison disciplinary proceedings must meet minimal due process requirements by (i) giving inmates advance written notice of charges at least 24 hours prior to the disciplinary hearing; (ii) allowing the inmate to call witnesses and present documentary evidence in the inmate's defense; and (iii) providing the inmate with a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-69.

Plaintiff does not dispute that he received notice of the misconduct charges or that he received a copy of the Major Misconduct Hearing Report containing the requisite findings. In addition, Plaintiff makes no allegations that he was deprived of the opportunity to present evidence in his own defense. He therefore does not point to any violations of the procedures set forth in *Wolff*.

Plaintiff contends, however, that the guilty finding was not supported by sufficient evidence because there was no physical evidence suggesting that he, in fact, was going to sell his medication to other prisoners. With regard to the burden of proof, "[N]ot much evidence is required to support the action of a prison disciplinary board." *Williams v. Bass,* 63 F.3d 483, 486 (6th Cir. 1995) (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 455 (1985)). The Supreme Court in *Hill* held that the requirements of due process are satisfied if "some evidence" supports the prison disciplinary board's decision to revoke good-time credits. *Hill*, 472 U.S. at 455. In determining whether a decision of a prison disciplinary board is supported by "some evidence," a federal court is "not required to examine the entire record, make an independent assessment of the credibility of witnesses, or weigh the evidence." *Williams,* 63 F.3d at 486 (citing *Hill,* 472 U.S. at

455).  "Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Williams,* 63 F.3d at 486 (citing *Hill,* 472 U.S. at 455-56) (emphasis added).  Moreover, the Constitution does not require that the evidence logically preclude any conclusion but the one reached by the hearings officer in the disciplinary proceeding.  *Hill,* 472 U.S. at 456; *see also Falkiewicz,* 271 F. Supp. 2d at 948.  A hearings officer in a prison disciplinary proceeding is not required to find the prisoner guilty beyond a reasonable doubt, or find that guilty was the only reasonable interpretation of the evidence.  *Thomas v. Marberry,* No. 06-cv-13282, 2007 WL 1041250, at *2 (E.D. Mich. Apr. 4, 2007) (citing *Mullins v. Smith,* 14 F. Supp. 2d 1009, 1012 (E.D. Mich. 1998)).

Plaintiff contends that he was not trying to hide his medication but he was having difficulty swallowing his medication.  Nurse Strand and Officer Gregoire provided firsthand reports of Plaintiff's actions.  When she checked Plaintiff's mouth, Nurse Strand stated that Plaintiff's medication fell from his upper lip.  Officer Gregoire confirmed Nurse Strand's statement.  Further, Plaintiff did not indicate why he was having difficulty swallowing the pill.  Based upon the record, there clearly was "some evidence" supporting the hearing officer's finding of guilt.  *See Williams,* 63 F.3d at 486 (citation omitted).  Plaintiff, therefore, fails to state due process claims against Defendants Strand and Palin arising from the misconduct proceedings.[1]

---

[1]Defendant Hearings Officer Palin is also immune from Plaintiff's claims for monetary damages.  The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity in relation to actions within the officer's authority.  *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); Mich. Comp. Laws §§ 791.251-255. *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same).

To the extent that Plaintiff claims he is entitled to notice prior to the discontinuance of his medication, he also fails to state a claim. Plaintiff does not have a due process right to medication. Plaintiff's interest in his medical treatment arises out of the Eighth Amendment instead of the Due Process Clause of the Fourteenth Amendment.[2] Plaintiff therefore fails to state a due process claim.

### C. First Amendment - Access to the Courts

Plaintiff argues that Defendants violated his right to access the courts when they denied him entrance to the law library on eight occasions. Plaintiff also claims that prison staff refused to give him his legal materials when he was on paper and property restrictions. After he was taken off those restrictions, Plaintiff noticed that a Step II grievance form was missing as well as other rough draft documents.

It is well established that prisoners have a constitutional right of access to the courts under the First and Fourteenth Amendments. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right of access to the courts has never been equated with the access of legal materials at the prison library. *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985); *see also Lewis v. Casey*, 518 U.S. 343, 351 (1996) (a sub-par library or legal assistance program does not establish relevant actual injury). In *Bounds*, 430 U.S. 817, the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis*, 518 U.S. 343. Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further,

---

[2]This Court has addressed Plaintiff's Eighth Amendment claim in Section E.

the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. Mar. 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. Mar. 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker*, 771 F.2d at 932. An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994); *see also Dellis*, 257 F.3d at 511 (citing *Lewis*, 518 U.S. at 351 (inmate must demonstrate actual injury to pending or contemplated litigation)).

The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Plaintiff has not alleged an actual injury for the occasions that he was denied access to the law library, for the lack of legal materials while on paper and property restrictions or for a missing Step II grievance form. Plaintiff does not claim that the deprivations of the law library, his legal materials or his Step II grievance form interfered with any legal action, much less a criminal appeal, habeas corpus action, or nonfrivolous civil rights case. *Thaddeus-X*, 175 F.3d at 391; *Lewis*, 518 U.S. at 353. The Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. 353 & n.3). The *Christopher* Court held that, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher*, 536 U.S. at 416.

Plaintiff's argument that he was denied access to the law library also fails because the right of access to the courts has never been equated with the access of legal materials at the prison library. *Walker*, 771 F.2d at 932; *see also Lewis*, 518 U.S. at 351 (a sub-par library or legal assistance program does not establish relevant actual injury).

Moreover, Plaintiff's ability to exhaust his administrative remedies was not thwarted by the missing Step II grievance form. If Plaintiff could no longer file his Step II appeal, he could proceed to the next step in the three-step grievance process. *See* MDOC POLICY DIRECTIVE 03.02.130, ¶ FF (effective July 9, 2007). In addition, even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file an institutional grievances. *See, e.g.*, *Lewis*, 518 U.S. 343; *Bounds*, 430 U.S. at 821-24. The exhaustion

requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.

Because Plaintiff cannot show actual injury, Plaintiff fails to state a First Amendment claim for denial of his right to access the courts.

### D. First Amendment - Retaliation

Plaintiff argues that he was subjected to retaliation for filing grievances against LRF prison staff. Plaintiff claims that Defendants retaliated by threatening to place him in administrative segregation and eventually placing him in administrative segregation, and by transferring him to IBC.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394. In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Filing a grievance is constitutionally protected conduct under the First Amendment. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000

WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Plaintiff alleges that he filed several grievances against prison staff. The Court therefore will assume that Plaintiff has adequately alleged the first element of a retaliation claim.

Plaintiff, however, cannot show his transfer to IBC was an adverse action taken against him for filing grievances against LRF staff. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005);); *see also Yarrow*, 78 F. App'x. at 543 ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted), *but see Hill*, 630 F.3d at 473-75 (holding that, while a transfer ordinarily does not constitute adverse action, a transfer to administrative segregation or another prison's lock-down unit can be sufficient to constitute adverse action). The *Hill* court held that transfer to a lock-down unit at another facility is more than just a transfer, and is more akin to the transfer in *Siggers-El*, 412 F.3d at 701-02, in which the consequence of transfer would affect the prisoner's ability to pay his lawyer, thereby affecting his access to the courts. Similarly, the Sixth Circuit has held that a transfer to segregation or to an area of the prison used to house mentally disturbed inmates could be sufficiently adverse. *See Thaddeus-X*, 175 F.3d at 398.

Plaintiff's transfer was from LRF, a facility that houses level I, II and IV prisoners to IBC, a facility that also houses level I, II and IV prisoners. Plaintiff does not allege that he was transferred to a different security level, to segregation at IBC or to an area of IBC that houses

mentally disturbed inmates. *See Thaddeus-X*, 175 F.3d at 398; *Hill*, 630 F.3d at 473-75. Moreover, Plaintiff does not allege that the transfer inhibited his ability to access the courts. *See Sigger-El*, 412 F.3d at 702. Plaintiff's transfer to IBC therefore does not amount to adverse action.

Plaintiff also claims that Defendants threatened to place him in administrative segregation in retaliation for filing grievances, and eventually housed him in administrative segregation. A transfer to administrative segregation is considered an adverse action. *See Thaddeus-X*, 175 F.3d at 398. However, Plaintiff has not shown a casual connection between the transfer to administrative segregation and the filing of his grievances. Plaintiff's allegations as to causation are wholly conclusory. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Although in certain circumstances temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff complains that he was threatened and eventually placed in administrative segregation because he was "exhausting [his] administrative remedies." (Compl., Page ID #7, docket #1.) Plaintiff, however, does not give any facts regarding the grievance or grievances he was exhausting through the three-step grievance process. Moreover, Plaintiff attached a Step I grievance denial to his complaint, which provided that Plaintiff was reclassified to administrative segregation because he was found guilty of fighting, possession of a weapon and substance abuse. (Attach. to Compl., Page ID #50, docket #1-1). Because Plaintiff allegations as to causation are wholly conclusory, Plaintiff fails to state a retaliation claim for threatening to place him and placing him in administrative segregation.

In summary, Plaintiff fails to state First Amendment retaliation claims for his transfer to IBC, for the threat to place him in administrative segregation and for his placement in administrative segregation.

### E. Eighth Amendment

At this stage of the proceedings, the Court finds that Plaintiff's allegations against Defendant Hoekstra for failing to treat his bi-polar mood disorder are sufficient to state an Eighth Amendment claim. Plaintiff's state-law claims will also be served.

### **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Patricia L. Caruso, Royal H. Calley, Mary Berghuis, Mark Sutherby, L. Strand, (unknown) Grasick and D. J. Palin will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve Plaintiff's Eighth Amendment claim against Defendant (unknown) Hoekstra.

An Order consistent with this Opinion will be entered.


Dated:   April 14, 2011           /s/ Paul L. Maloney
                                  Paul L. Maloney
                                  Chief United States District Judge